SEYFARTH SHAW LLP
Christian Rowley (SBN 187293)
crowley@seyfarth.com
Petersen Walrod (SBN 339521)
pwalrod@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendant
KAISER FOUNDATION HOSPITALS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CECILE KASENGELA, an individual,

Plaintiff,

v.

KAISER FOUNDATION HOSPITALS, a California corporation; KAISER FOUNDATION HEALTH PLAN INC.; a California corporation; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, a partnership; BRAD UMSTED, an individual; and DOES 1-100, inclusive,

Defendants.

Case No. 2:26-cv-01666 WLH (AGR)

Before the Hon. Wesley L. Hsu

**DEFENDANT KAISER FOUNDATION HOSPITALS' OPPOSITION TO PLAINTIFF CECILE KASENGELA'S MOTION FOR REMAND**

Hearing Date: August 11, 2026
Hearing Time: 1:30 pm

Complaint Filed: January 6, 2026
Complaint Served: January 16, 2026

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 1
III. DISCUSSION ..... 3
A. The Motion Relies on Fabricated Legal Authority ..... 3
B. Federal Jurisdiction Exists Because the LMRA Preempts the FAC ..... 5
1. The Standard for Section 301 Preemption under the LMRA ..... 5
2. Plaintiff's Whistleblower and Wrongful Termination Claims (COA's 5 and 6) are Preempted under Burnside Step 1 ..... 6
a. Under Burnside Step 2, Plaintiff's Discrimination (COA 2) Retaliation (COA's 1, 4 and 5) and Wrongful Termination (COA 6) Claims are Preempted because Resolving them Requires Reference to the CBA ..... 9
C. Federal Question Jurisdiction Also Exists Under Garmon ..... 11
D. All Claims Arise from the Same Facts for Supplemental Jurisdiction ..... 13
IV. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Kaiser Foundation Hospitals*,
Case No. 25-cv-02575-LB, Dkt No. 55 (N.D. Cal., May 19, 2025) .......... 10

*Allis Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985) .......... 5, 9

*Matter of Amoco Petroleum Additives Co.*,
964 F.2d 706 (7th Cir. 1992) .......... 11

*Armstrong v. WB Studio Enters., Inc.*,
No. CV 19-9587-GW-JPRX, 2020 WL 1967566 (C.D. Cal. Apr. 24, 2020) .......... 10

*Belknap, Inc. v. Hale*,
463 U.S. 491 (1983) .......... 12

*Brands v. First Transit, Inc.*,
278 F. App'x 722 (9th Cir. 2008) .......... 12

*Bridget v. Telecare Corp.*,
No. 2:19-cv-01224-AB-JC, 2019 WL 1931740 (C.D. Cal. May 1, 2019) .......... 14

*Brown v. Brotman Med. Ctr., Inc.*,
571 F. App'x 572 (9th Cir. 2014) .......... 14

*Burnside v. Kiewit Pac. Corp.*,
491 F.3d 1053 (9th Cir. 2007) .......... *passim*

*Caminetti v. United States*,
242 U.S. 470 (1917) .......... 4

*Chapman v. Horace Mann Prop. & Cas. Ins. Co.*,
No. CV 24-10546-MWF, 2025 WL 3724904 (C.D. Cal. Aug. 14, 2025) .......... 4

*Curtis v. Irwin Indus., Inc.*,
913 F.3d 1146 (9th Cir. 2019) .......... 6

*Ettedgui v. WB Studio Enters. Inc.*,
No. 2:20-CV-8053-MCS-MAA, 2020 WL 9256608 .......... 7

*Feder v. Mercedez-Benz USA, LLC*,
No. CV2307348MWFRAOX, 2023 WL 7089920 (C.D. Cal. Oct. 24, 2023) .......... 8

*Fitzpatrick v. Gates*,
No. CV0004191GAFAJWX, 2001 WL 630534 (C.D. Cal. Apr. 18, 2001) .......... 8

*Garcia v. Rite Aid Corp.*,
No. CV1702124BROSKX, 2017 WL 1737718 (C.D. Cal. May 3, 2017) ..................... 7

*Glacier Northwest, Inc. v. International Brotherhood of Teamsters, Local Union No. 174*,
598 U.S. 771 (2023) ..................... 12, 13

*Greenly v. Sara Lee Corp.*,
No. CIV S-06-1775 WBS EFB, 2008 WL 1925230 (E.D. Cal. Apr. 30, 2008) ..................... 9

*Guaschino v. Hyundai Motor Am.*,
No. CV2304354MWFJPRX, 2023 WL 8126846 (C.D. Cal. Sept. 27, 2023) ..................... 8

*Hall v. United States*,
314 F.Supp. 1135 (N.D. Cal. 1970) ..................... 8

*Henson v. Costco Wholesale Corp.*,
No. CV 25-03958-MWF, 2025 WL 1844224 (C.D. Cal. July 2, 2025) ..................... 4

*Hollis v. Render*,
No. CV 24-02292-MWF, 2025 WL 2029815 (C.D. Cal. July 21, 2025) ..................... 4

*Kroeger v. L3 Techs., Inc.*,
No. 217CV08489JFWAGR, 2018 WL 1357363 (C.D. Cal. Mar. 15, 2018) ..................... 12

*Livadas v. Bradshaw*,
512 U.S. 107 (1994) ..................... 4, 10

*Local 926, Int'l Union of Operating Eng'rs v. Jones*,
460 U.S. 669 (1983) ..................... 12

*Martinez v. Omni Hotels Mgmt. Corp.*,
514 F. Supp. 3d 1227 (S.D. Cal. 2021) ..................... 6

*Mata v. Avianca, Inc.*,
678 F. Supp. 3d 443 (S.D.N.Y. 2023) ..................... 4

*Mayes v. Kaiser Found. Hosps.*,
917 F. Supp. 2d 1074 (E.D. Cal. 2013) ..................... 13

*Mayfield v. Kaiser Found. Health Plan, Inc.*,
No. CV092150AHMFMOX, 2009 WL 10671702 (C.D. Cal. Oct. 27, 2009) ..................... 9

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ..................... 11

*Metro. Life Ins. Co. v. Taylor*,
481 U.S. 58 (1987) ..................... 3, 4, 9

*Nelson v. Foster Poultry Farms*, No. 1:21-cv-00222-JLT-BAM, 2022 WL 970776 (E.D. Cal. Mar. 31, 2022) .......... 14

*Newberry v. Pacific Racing Association*, 854 F.2d 1142 (9th Cir. 1988) .......... 9

*Quigley v. United Airlines, Inc.*, No. 3:21-CV-00538-WHO, 2021 WL 1176687 (N.D. Cal. Mar. 29, 2021) .......... 10

*Raphael v. Tesoro Ref. & Mktg. Co., LLC*, No. 2:15–cv–02862–ODW (Ex), 2015 WL 3970293 (C.D. Cal. June 30, 2015) .......... 6

*Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-CV-07874-LB, 2022 WL 1016664 (N.D. Cal. Apr. 5, 2022) .......... 8

*Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) .......... 11

*San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) .......... *passim*

*Sears Roebuck & Co. v. Carpenters*, 436 U.S. 180 (1978) .......... 14

*Sholly v. Annan*, 450 F.2d 74 (9th Cir. 1971) .......... 8

*Sullivan v. Aramark Unif. & Career Apparel, Inc.*, No. C11-02973 HRL, 2011 WL 5827220 (N.D. Cal. Nov. 18, 2011) .......... 7, 9

*Thibodeaux v. Bay Area Bldg. Material Teamsters, Local 853*, No. 17-cv-00188-MEJ, 2017 WL 1493280 (N.D. Cal. Apr. 26, 2017) .......... 7

*Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993 (9th Cir. 1987) .......... 5, 9, 10

**State Cases**

*Guidry v. Marine Eng'rs & # 039; Beneficial Ass'n*, No. C 11-05347 CRB, 2012 WL 646302, at *3 (N.D. Cal. Feb. 28, 2012) .......... 6

*Sheerer v. Panas*, 119 Cal.App.5th 367 (2026) .......... 5

**Federal Statutes**

28 U.S.C. § 1331 .......... 3

29 U.S.C. § 185(a) .......... 5

LMRA § 301 .......... *passim*

NLRA (29 U.S.C. §§ 157 & 158) .......... 12

**State Statutes**

Gov. Code § 12900 *et seq.* .......... 2, 3
Gov. Code § 12940 .......... 2
Health And Safety Code § 1278.5 .......... 3
Labor Code § 1102.5 .......... 3

**Constitutional Provisions**

United States Constitution Article III .......... 14

## I. INTRODUCTION

Plaintiff Cecile Kasengela's ("Plaintiff") six claims against Defendant Kaiser Foundation Hospitals ("KFH" or "Defendant") arise from her employment relationship with Defendant, which was governed by a collective bargaining agreement. Plaintiff previously alleged that she was terminated because other nurses engaged in a "strike" against her at the behest of her manager Brad Umsted ("Umsted") and her union. This remains a binding judicial admission, notwithstanding Plaintiff's attempt to evade LMRA preemption by selectively expunging some of these allegations. The core of Plaintiff's claims remains that Defendant failed to abide by corrective action and progressive discipline procedures provided by the CBA, notwithstanding the First Amended Complaint's ("FAC") amendments. And, her claims remain preempted by the National Labor Relations Act ("NLRA") by virtue of *Garmon* preemption, notwithstanding the FAC's amendments. Thus, the FAC's first, second, fourth, fifth and sixth causes of action for retaliation, discrimination and wrongful termination, all of which are premised on Plaintiff's termination, are preempted by the LMRA or NLRA, and therefore, federal question jurisdiction is present.

## II. BACKGROUND

Plaintiff's employment was, at all relevant times, governed by the Labor-Management Agreement between KFH and the United Nurses Association of California/Union of Health Care Professionals (commonly called "UNAC") nurses' union for October 1, 2021 – September 30, 2025 (the "CBA"). *See*, Declaration of Jeremy Lyon in Support of Defendant's Notice of Removal ("Lyon Decl."), ECF No. 1-1, Exhibit A (hereinafter, the "CBA"). The CBA provides that "[a]ny complaint or dispute arising between a Health Care Professional and/or the Association and the Employer concerning the interpretation or application of the provisions of this Agreement or any questions relating to wages, hours of work, or other conditions of employment, shall be resolved in accordance with this Article." CBA at Section 1002. The CBA also

establishes the process and standards for progressive discipline, including corrective actions (*id*. at Article 9; Letter of Agreement #2); raising and resolving grievances (*id*. at Article 10); hours of work and overtime (*id*. at Sections 1601-1623), and in certain circumstances applicable here, discharge (*id*. at Section 912 ["Health Care Professionals may be discharged for gross misconduct or gross neglect of duty without prior warning."])

On January 6, 2026, Plaintiff filed her original complaint (ECF No. 1-3, Ex. A), which alleged thirteen causes of action against Defendant, several other entities, her union, UNAC, which she alleged she was a part of, and five individuals. *See generally*, Complaint ("Compl."), p. 2 (Summary), ¶ 1, 15. She alleged that her fellow nurses engaged in a "strike against plaintiff" (Compl., ¶ 78), wherein they "refused to clock in and take their patient assignments stating that they are afraid to work with" [Plaintiff]. Complaint, ¶ 80. Because of this strike, Plaintiff was suspended and then terminated on or around November 15, 2024. *Id*. Plaintiff then filed a union grievance, but was "forced to decline" further representation because she was "quickly oppressed" by UNAC in "breach of Plaintiff's rights to fair representation." Complaint, ¶ 91. Plaintiff alleges that she "had to file a complaint against UNAC with the NLRB to protect herself . . .". *Id*. at ¶ 92.

On February 17, 2026, Defendant timely removed the action to this Court. On February 24, 2026, Defendant filed its First Motion to Dismiss (ECF No. 5). On March 10, 2026, Plaintiff filed the First Amended Complaint (the "FAC") (ECF No. 14). The FAC asserts claims for: (1) Retaliation for Engaging in Protected Activity in Violation Of FEHA, Gov. Code § 12900 *et seq*.; (2) Race Discrimination in Violation of FEHA, Gov. Code § 12940; (3) Failure to Prevent Harassment/Discrimination in Violaion [sic] of FEHA, Gov. Code § 12940; (4) Retaliation for Complaints of Harasment[sic]/ Discrimination/ Retaliation in Violation of FEHA Gov. Code § 12940; (5) Violation of Labor Code 1102.5; and (6) Wrongful Termination in Violation Of FEHA, Gov. Code § 12900 *et seq*, Health And Safety Code Section 1278.5, and Public Policy.

On March 24, 2026, Defendant moved to dismiss the FAC on the grounds that the FAC is (1) preempted by the Labor Management Relations Act (the "LMRA"); (2) preempted under *Garmon*; and (3) asserts claims that are inadequately alleged (ECF No. 17).

On June 23, 2026, Plaintiff filed this Motion to Remand (ECF No. 49) (the "Motion"). Although the Motion did not contain a hearing date, the Court *sua sponte* set the Motion for hearing on August 11, 2026 (ECF No. 58).

## III. DISCUSSION

### A. The Motion Relies on Fabricated Legal Authority

As an initial matter, the Motion contains numerous (ostensible) citations to legal authority that are unverifiable, such as:

- The Motion, 8:19-20 attributes the following quotation to 28 U.S.C. § 1331: "A federal question must be presented on the face of the Plaintiff's properly pleaded complaint to establish federal jurisdiction." However, 28 U.S.C. § 1331 does not make that statement.[1]
- The Motion, 9:7-8 attributes the following quotation to *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987): "The fact that the claims may be subject to a federal defense does not create a federal question." Page 63 of Volume 481 of the United States Reports does not contain that statement. In fact, *Metro. Life* specifies that "[o]ne corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by § 301 of the LMRA for such special treatment." *Id*. at 63-64.

[1] In its entirety, 28 U.S.C. § 1331 provides that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

- The Motion at 14:2-5 attributes the following quotation to *Caminetti v. United States*, 242 U.S. 470, 485 (1917): "unambiguous language dictates the sole boundaries of legislative intent without room for judicial construction." That statement is not made anywhere in the *Caminetti* decision.
- The Motion at 15:6-9 attributes the following statement to *Livadas v. Bradshaw*, 512 U.S. 107, 114 (1994) which, again, is not present in the decision: "State law is only completely preempted if the resolution of the claim is "substantially dependent" on an analysis of the CBA."

These citations were, presumably, generated by Plaintiff's undisclosed use of artificial intelligence (AI), and her failure to verify the authenticity of the output of that AI.

This practice is antithetical to the baseline of good faith that is expected out of participants in the public court system, and is no less objectionable because of Plaintiff's pro se status. "[P]ro se litigants are still required to comply with the Federal Rules of Civil Procedure and the Local Rules." *Chapman v. Horace Mann Prop. & Cas. Ins. Co.*, No. CV 24-10546-MWF (BFMX), 2025 WL 3724904, at *2 (C.D. Cal. Aug. 14, 2025) (in context of presumably AI-generated fake citations); *Hollis v. Render*, No. CV 24-02292-MWF (BFMX), 2025 WL 2029815, at *3 (C.D. Cal. July 21, 2025) (same).

As these courts, and others, have noted, "many harms flow from the submission of fake opinions." *Henson v. Costco Wholesale Corp.*, No. CV 25-03958-MWF (RAOX), 2025 WL 1844224, at *2 (C.D. Cal. July 2, 2025) (citing *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023)). These include time and money wasted "exposing the deception", the deprivation of the Court's time from "other important endeavors", and broader harms to the reputation of judges to whom false opinions are attributed and the promotion of "cynicism about the legal profession and the American judicial system." *Id.* Given the increasing "access [to] AI tools that purport to do lawyering" (*Sheerer v. Panas*, 119 Cal.App.5th 367, 370 (2026)), Defendant would add that failing to admonish the use of AI also further incentivizes this improper behavior, especially on the part of

pro se litigants who do not understand (or do not care) that they take on responsibilities when they come before the Court.

Accordingly, Defendant objects to the Motion's use of fake opinions, requests that the Court disregard any legal authority that is not accurate, and requests that the Court admonish Plaintiff for her reliance on unverified AI outputs.

### B. Federal Jurisdiction Exists Because the LMRA Preempts the FAC

#### 1. The Standard for Section 301 Preemption under the LMRA

This Court has original jurisdiction over this action under the LMRA, which grants federal district courts subject-matter jurisdiction over claims involving the *interpretation* of "contracts between an employer and a labor organization." 29 U.S.C. § 185(a) (referred to often as "Section 301"); *see Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (if the claim requires the court to interpret a collective bargaining agreement or is "substantially dependent on analysis of a collective-bargaining agreement," the claim is preempted, even if ostensibly based on state law).

Section 301 provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (citations omitted).

Section 301 of the LMRA has been construed broadly to preempt state-law actions if the claims cannot be resolved without interpreting the applicable CBA. See *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("[W]hen resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a section 301 claim, or dismissed as preempted by federal labor-contract law.") (internal citations omitted). "A state law claim will be preempted if it is so 'inextricably intertwined' with the terms of a labor contract that its resolution will require judicial interpretation of those

terms." *Raphael v. Tesoro Ref. & Mktg. Co., LLC*, No. 2:15–cv–02862–ODW (Ex), 2015 WL 3970293, *3 (C.D. Cal. June 30, 2015) (internal citations omitted). Generally, district courts in the Ninth Circuit "look to the conduct at the heart of the controversy" to see if a plaintiff has "effectively masked a federal claim with state law labels." *Guidry v. Marine Eng'rs & # 039; Beneficial Ass'n*, No. C 11-05347 CRB, 2012 WL 646302, at *3 (N.D. Cal. Feb. 28, 2012). Thus, if a claim is preempted by the LMRA, the Court has jurisdiction under the complete preemption corollary to the well-pleaded complaint rule. *See e.g.*, *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019); *Martinez v. Omni Hotels Mgmt. Corp.*, 514 F. Supp. 3d 1227, 1236 (S.D. Cal. 2021).

The Ninth Circuit has articulated a two-part test to determine whether a cause of action is preempted by the LMRA (and thus, whether federal question jurisdiction exists). See *Burnside*, 491 F.3d at 1059. Under the first prong, the court must determine if the asserted claim involves an independent right based on state law, or a negotiable right based on a CBA. See *id*. at 1060. If the claim is based on a negotiable right that the CBA has addressed, then the claim is preempted. See *id*. at 1060. Under the second prong, if the right exists independently of the CBA, the court must then consider whether resolving the dispute nevertheless is "substantially dependent on analysis of a collective bargaining agreement." *Id*. If such dependence exists, then the claim is preempted by Section 301. See *id*.

### 2. Plaintiff's Whistleblower and Wrongful Termination Claims (COA's 5 and 6) are Preempted under Burnside Step 1

Where a complaint alleges that a termination was wrongful for reasons that are "not rights California recognizes as furthering independent public policies- the trier of fact will be required to interpret" a governing CBA's provisions regarding protections from termination. *Garcia v. Rite Aid Corp.*, No. CV1702124BROSKX, 2017 WL 1737718, at *5 (C.D. Cal. May 3, 2017). Where a CBA "establishes standards concerning seniority rights, nondiscrimination, personnel reductions, filling vacancies, probationary periods, and other matters bearing on hiring and termination" and the wrongful

termination is based at least in part on such rights, it is preempted. *Ettedgui v. WB Studio Enters. Inc.*, No. 2:20-CV-8053-MCS-MAA, 2020 WL 9256608, at *8.

Plaintiff's original complaint alleged a pattern of denying her "rights to fact-finding investigation . . ." (*see e.g.*, Compl., ¶¶ 14, 15, 25), that she was suspended "without due process nor evidence" (*id*., ¶ 37) and "in violation of just cause" (*id*. at p. 3); that her alleged manager Brad Umsted ("Umsted") refused to schedule Plaintiff for "her contractual 36 hours a week" (*id*., ¶ 40); and violated CBA requirements for imposing progressive discipline. *See e.g.*, Complaint, ¶ 61 (Defendant "fail[ed] to establish *just cause* for the level 3 corrective action regarding medications administration of Haldol and Diltiazem".) Plaintiff also admits that "[Umsted] and UNAC organized and instructed nurses to strike against plaintiff and forced her out of her job on July 17, 2024." *Id*. at ¶ 78.

These rights arise solely from the CBA and not from state law. CBA, Section 912 ("The discipline imposed will be appropriate to the offense."); Section 907 ("The Employer shall discipline, suspend or discharge any Health Care Professional for *just cause* only.") Plaintiff's Complaint is based on a pattern of complaints and alleged retaliation arising from alleged deprivations of her CBA-provided rights. The LMRA preempts state law wrongful termination and whistleblower retaliation cases in these circumstances. *See, Thibodeaux v. Bay Area Bldg. Material Teamsters, Local 853*, No. 17-cv-00188-MEJ, 2017 WL 1493280, at *6 (N.D. Cal. Apr. 26, 2017) (holding that Plaintiff's claims were preempted by Section 301 of the LMRA where Plaintiff alleged breach of the CBA's terms on the face of the complaint). *Sullivan v. Aramark Unif. & Career Apparel, Inc.*, No. C11-02973 HRL, 2011 WL 5827220, at *5 (N.D. Cal. Nov. 18, 2011) is instructive:

> An analysis of any and all of the events leading up to Sullivan's termination do require such interpretation because the court must analyze whether Sullivan's termination and the process leading thereto were justified in light of the agreement.

The same is true here. The Court will have to interpret whether Plaintiff really was given corrective actions in violation of "just cause" and whether she did have a right to fact-finding investigation that gave her certain protections, according to the governing CBA.

The FAC attempts to evade LMRA preemption by selectively deleting references to these CBA-governed rights. But this effort fails, because the Complaint's admissions of these dispositive facts bind her. " 'A party is estopped to contradict a position he advocated in prior pleadings.' " *Feder v. Mercedez-Benz USA, LLC*, No. CV2307348MWFRAOX, 2023 WL 7089920, at *2 (C.D. Cal. Oct. 24, 2023) (citing *Sholly v. Annan*, 450 F.2d 74, 76 (9th Cir. 1971)) (internal punctuation omitted). A "Plaintiff may not now go against the truth of his own pleading." *Guaschino v. Hyundai Motor Am.*, No. CV2304354MWFJPRX, 2023 WL 8126846, at *3 (C.D. Cal. Sept. 27, 2023). *See also*, *Fitzpatrick v. Gates*, No. CV0004191GAFAJWX, 2001 WL 630534, at *3, n. 4 (C.D. Cal. Apr. 18, 2001) ("plaintiffs are bound by admissions in their complaints") (citing *Hall v. United States*, 314 F.Supp. 1135, 1138 n. 3 (N.D. Cal. 1970)). Indeed, the Northern District of California denied just such a move in *Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-CV-07874-LB, 2022 WL 1016664, at *2 (N.D. Cal. Apr. 5, 2022), where after a defendant successfully moved to dismiss on the basis of preemption of an overtime claim, the plaintiff attempted to abandon the overtime and instead use a minimum wage claim. However, the court still found that the complaint was preempted.

Therefore, because the original Complaint put labor issues at play, and showed that the claims arising under them were preempted, they remain preempted, and accordingly, Plaintiff's fifth and sixth COA's are preempted under *Burnside* step 1.[2] Therefore, federal question jurisdiction is present.

---

[2] Plaintiff's FEHA claims, COA's 1 – 4, are also preempted because they are not sufficiently alleged, and rely on the termination as their only well-pled allegation. In almost the same situation as this FAC, the court in *Sullivan* found that the LMRA preempted FEHA claims because the FEHA claims were made with "nothing but the

**a. Under *Burnside Step 2*, Plaintiff's Discrimination (COA 2) Retaliation (COA's 1, 4 and 5) and Wrongful Termination (COA 6) Claims are Preempted because Resolving them Requires Reference to the CBA**

Section 301 also preempts claims "that are substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers*, 471 U.S. at 211; *Metropolitan Life, Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). "The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . and any state claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pacific Racing Association*, 854 F.2d 1142, 1146 (9th Cir. 1988); *Young*, 830 F. 2d at 997-98 (Section 301 preemption supplants state claim with federal claim). Where the right at issue in the lawsuit is created by state law but the application of state law requires the interpretation of a CBA state law claims are preempted by Section 301. *Greenly v. Sara Lee Corp.*, No. CIV S-06-1775 WBS EFB, 2008 WL 1925230, at *21 (E.D. Cal. Apr. 30, 2008).

Where alleged retaliation or an adverse employment action involve facts that are 'inextricably intertwined' with interpreting a CBA, claims for retaliation and wrongful termination are preempted. *Mayfield v. Kaiser Found. Health Plan, Inc.*, No. CV092150AHMFMOX, 2009 WL 10671702, at *4 (C.D. Cal. Oct. 27, 2009). "[A] discrimination claim can be preempted to the extent that it requires interpretation of a CBA provision." *Quigley v. United Airlines, Inc.*, No. 3:21-CV-00538-WHO, 2021 WL 1176687, at *6 (N.D. Cal. Mar. 29, 2021). "[C]ourts in this Circuit have found preemption when a plaintiff's discrimination claims require interpretation of a CBA." *Armstrong v. WB Studio Enters., Inc.*, No. CV 19-9587-GW-JPRX, 2020 WL 1967566, at *3 (C.D. Cal. Apr. 24, 2020) (collecting cases). *See also, Adams v. Kaiser Foundation*

---

barest conclusory allegations . . . without the requisite supporting facts", preemption is applicable where a court is "left with nothing to analyze except for whether [the Plaintiff] was denied rights provided for in" the governing CBA. *Sullivan*, 2011 WL 5827220, at *4.

*Hospitals*, Case No. 25-cv-02575-LB, Dkt No. 55 (N.D. Cal., May 19, 2025) ("[t]he plaintiff's claim is preempted under at least *Burnside* step two. Though he sues for discrimination under FEHA, the plaintiff's claim requires interpretation of a CBA.").

Here, Plaintiff's claims are also preempted under *Burnside*, Step 2. The FAC is still premised on adverse employment actions, including termination (*see*, FAC, Paras. 5, 66, 73, 89, 95, 105.) These adverse employment actions will require interpretation of the CBA's progressive discipline procedures, the just cause requirements, and the termination restrictions set forth in the CBA, as explained above. The FAC still alleges violation of CBA rules for staffing ratios (¶ 47; CBA, Article 13 (staffing ratios)). And Plaintiff's previous allegations of violations relating to her pension (Compl., ¶ 90); denial of a promotion despite CBA-provided seniority entitlement (Compl., ¶ 16); and use of the wrong type of non-working pay code (Compl., ¶ 54), that are all governed by the CBA, and still will require analysis of the CBA.

Thus, Plaintiff's Complaint and each cause of action alleged therein are also preempted because they are "substantially dependent" on the terms of, and inextricably intertwined with matters arising from, the CBA in accordance with *Young*, 830 F.2d at 997. As such, the FAC is preempted by the LMRA. See *Burnside*, 491 F.3d at 1059. "To determine whether a state law right is 'substantially dependent' on the terms of a CBA, the Court directs us to decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Id*. (citing *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994)). Again, Plaintiff's attempt to amend the FAC to delete some of these allegations does not alter the fact that her references to fact-finding investigations, progressive discipline and the nurses' strike against her are binding judicial admissions.[3]

---

[3] The Motion's reference to *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025) does not require a contrary result. In *Royal Canin*, the Court determined that, where federal jurisdiction was *purely* based on a federal claim, and the plaintiff rescinded that claim in an amended complaint, a court could not retain *supplemental* jurisdiction over the non-federal claims. That is inapposite from the situation here; Plaintiff has not rescinded the *claims* that give rise to federal jurisdiction, she has simply (and only partially) removed allegations of *fact* that show the existence of federal jurisdiction.

Finally, any defenses Defendant pleads will necessarily require an interpretation of the CBA. In order for Defendant to defend the allegations that it discriminated and retaliated against Plaintiff by applying corrective actions, intentionally denying her assignments, or eventually discharging her, it will have to point to the portions of the CBA that specify the criteria governing the process for those actions. For example, Defendant could argue that it properly assigned shifts to employees, subject to their seniority, in order to comply with the terms of the CBA. Additionally, denying promotion to someone for legitimate business-related, nondiscriminatory reasons is a defense to employment discrimination. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Compliance with the CBA would be such a nondiscriminatory reason. Additionally, whether KFH exercised its management rights in compliance with the other terms of the union contract necessarily requires the contract's interpretation of the interplay between the transfer, promotion, seniority and management rights clauses; such weighing will be especially delicate with respect to the alleged UNAC-coordinated "strike" that precipitated Plaintiff's termination. See *Matter of Amoco Petroleum Additives Co.*, 964 F.2d 706, 708 (7th Cir. 1992) ("A state court could not award damages without first construing the collective bargaining agreement and rejecting Amoco's interpretation of the management-rights clause."). Therefore, COA's 1, 2, 4, 5 and 6 are preempted under *Burnside* step 2, and the Court has subject matter jurisdiction over this action.

### C. Federal Question Jurisdiction Also Exists Under *Garmon*

Plaintiff's discrimination, retaliation and wrongful termination claims are also subject to "*Garmon* preemption" because the allegations supporting these claims fall within the primary jurisdiction of the NLRB. In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959), the Supreme Court held that state and federal courts must defer to the NLRB when a plaintiff's claim is actually or arguably subject to Section 7 or 8 of the NLRA (29 U.S.C. §§ 157 & 158). See *Belknap, Inc. v. Hale*, 463 U.S. 491, 498–99 (1983) (stating that state causes of action are preempted "if they concern conduct

that is actually or arguably either prohibited or protected" by the NLRA). Section 7 broadly protects certain employee rights, including the right to engage in protected, concerted activity. See *Glacier Northwest, Inc. v. International Brotherhood of Teamsters, Local Union No. 174*, 598 U.S. 771, 775 (2023). And Section 8 prohibits certain unfair labor practices, including interfering with employees' exercise of their Section 7 rights. *Id*. Because these claims are preempted under *Garmon*, they also provide a separate and independent basis for federal jurisdiction.

When assessing *Garmon* preemption, courts "determine whether the conduct that the state seeks to regulate or to make the basis of liability is actually or arguably protected or prohibited by the NLRA." *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676 (1983). When the claim is based "at least in part on union activities," it is preempted regardless of how a plaintiff attempts to characterize it. *Kroeger v. L3 Techs., Inc.*, No. 217CV08489JFWAGR, 2018 WL 1357363, at *3 (C.D. Cal. Mar. 15, 2018) (quoting *Brands v. First Transit, Inc.*, 278 F. App'x 722, 724 (9th Cir. 2008) (emphasis added).

The Complaint, notwithstanding her use of state law claims or the FAC's deletion of many of the labor-related allegations, is best understood as based on her labor activities. The most striking example of this is that the original complaint attributed the ultimate cause of Plaintiff's termination to an incident wherein an alleged employee of Defendant "and UNAC organized and instructed nurses to strike against plaintiff and forced her out of her job on July 17, 2024." Compl., ¶ 78. Plaintiff specifically attributes her termination to alleged concerted activity by UNAC. Because of this, the FAC's COA's that rely on the termination to satisfy an element are all based at least in part on union activities.

Moreover, the Complaint joined UNAC as a co-defendant, alleging that it was an "alter ego" of KFH (see, Complaint, p. 7, ¶ F), and that it violated her "right to fair representation" (see e.g., Compl., ¶¶ 18, 82, 91, 92). Plaintiff also complained to "HR for violations of her rights to a UNAC representative of her choice." (Compl., ¶ 82.) This

recurrent theme also forms a core of each of the Complaint's claims, which the FAC cannot avoid merely by deleting these allegations. Indeed, UNAC was a co-defendant for all causes of action, including those concerning discrimination, and thus her union relationship is directly a part of these claims. See also, *Mayes v. Kaiser Found. Hosps.*, 917 F. Supp. 2d 1074, 1085 (E.D. Cal. 2013) ("Despite plaintiff's characterization of this claim as relating to patient safety, his complaint is properly viewed as concerted activity for mutual aid and protection such that his termination was an unfair labor practice.")

Finally, Plaintiff's internal complaints about the alleged deprivations of her CBA-governed rights to progressive discipline, fact-finding investigations, and her contractual hours worked, are concerted activity. To the extent that Plaintiff attributes her termination to retaliation for these complaints, that is also covered by the NLRA and thus preempted under *Garmon*. Again, the fact that the FAC removed some of these allegations in an effort to avoid LMRA preemption does not alter the fact that they are binding admissions of what is at issue in this case.

No exception exists here. *Glacier Northwest*, 598 U.S. at 777, n.1. First, Plaintiff has a reasonable opportunity to secure a decision as to whether these acts were retaliatory under the NLRA; she filed a NLRB charge but abandoned it. Second, the alleged rights are not peripheral to the NLRA because the NLRA focuses on prohibiting employers from retaliating against employees who exercise their rights. Third, the alleged conduct is not so rooted in local feeling and responsibility that *Garmon* preemption does not apply. In fact, failing to retain jurisdiction over these allegations risks interfering with the NLRB's jurisdiction. See *Sears Roebuck & Co. v. Carpenters*, 436 U.S. 180, 196 (1978).

Therefore, the Court has federal question jurisdiction pursuant to NLRA preemption under the *Garmon* doctrine.

**D. All Claims Arise from the Same Facts for Supplemental Jurisdiction**

The Motion does not address supplemental jurisdiction. However, all of Plaintiff's claims arise from her employment and from the same allegations of an adverse employment action. Thus it is clear that, to the extent that the Court does not find that the

LMRA preempts any one of the FAC's six claims, that it may extend supplemental jurisdiction over that claim. They form part of the same case or controversy under Article III of the United States Constitution, providing a basis for the Court to assert supplemental jurisdiction over them. *Nelson v. Foster Poultry Farms*, No. 1:21-cv-00222-JLT-BAM, 2022 WL 970776, at *4 (E.D. Cal. Mar. 31, 2022) ("It is unnecessary to determine whether Plaintiff's remaining claims are preempted. Those claims relate to the same defendants and are grounded in Plaintiff's employment during the same period of time. Therefore, to the extent Plaintiff's remaining claims are not subject to preemption, supplemental jurisdiction over such claims would be appropriate."); *Bridget v. Telecare Corp.*, No. 2:19-cv-01224-AB-JC, 2019 WL 1931740, at *4 (C.D. Cal. May 1, 2019); *Brown v. Brotman Med. Ctr., Inc.*, 571 F. App'x 572, 576 (9th Cir. 2014) ('[A] district court may exercise supplemental jurisdiction over claims that are brought in conjunction with claims that are preempted by the LMRA.')

## IV. CONCLUSION

For all of the foregoing reasons, the Court should deny the Motion.

DATED: July 14, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Christian J. Rowley
Christian J. Rowley
Petersen Walrod

Attorneys for Defendant
KAISER FOUNDATION HOSPITALS

## LOCAL RULE 11-3 CERTIFICATION

I, Petersen D. Walrod, certify that this document complies with the word-count limitation set forth in C.D. Cal. Local Rule 11-6.

According to the word-processing system used to prepare this document, the foregoing Motion to Dismiss contains 5,792 words, excluding the caption, tables, signature block, and any material not counted under the Local Rules.

DATED: July 14, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Petersen Walrod
Christian J. Rowley
Petersen Walrod

Attorneys for Defendant
KAISER FOUNDATION HOSPITALS