JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILE KASENGELA,<br>Plaintiff,<br>v.<br>KAISER FOUNDATION HOSPITALS, *et al.*,<br>Defendants. | Case No. 2:26-cv-01666-WLH-CTS<br><br>**ORDER RE PLAINTIFF'S MOTION TO REMAND [49]** |

The Court is in receipt of Plaintiff Cecile Kasengela's ("Plaintiff") Motion to Remand (the "Motion"). (Mot., Dkt. No. 49). Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. For the foregoing reasons, the Court **GRANTS** the Motion to Remand.

# I. BACKGROUND

## A. Factual Background

Plaintiff is a former employee of Defendant Kaiser Foundation Hospitals ("Kaiser") where she worked as a nurse. (First Amended Complaint ("FAC"), Dkt. No. 14 at 3). Plaintiff alleges that (1) she was discriminated against, harassed and experienced a hostile work environment on multiple occasions, (2) in response, she filed complaints with human resources and spoke up to managers and (3) due to managers' discriminatory motives and in retaliation for her whistleblower activities, performance issues were fabricated about her, and she was suspended several times and finally terminated. (*See generally* FAC).

Plaintiff alleges that her manager, Brad Umsted ("Umsted"), made comments profiling her based on her race and national origin in June 2022, and, thereafter, in July 2022 she filed her first complaint reporting harassment, discrimination, hostile work environment and retaliation. (*Id.* ¶¶ 13-14). Plaintiff claims that, in September 2022, Umsted launched a "campaign of unlawful harassment and retaliation" against her. (*Id.* at 3). The alleged harassment included Umsted's statements that Plaintiff posed a patient safety risk, stole money from Kaiser and created a hostile work environment. (*Id.* ¶ 1). Plaintiff reported these statements to HR, and, two weeks later, in October 2022 Umsted suspended Plaintiff, claiming that she overmedicated patients and created a hostile work environment. (*Id.* ¶ 2). Plaintiff filed a complaint with human resources in January 2023 regarding harassment, discrimination and retaliation, after which human resources instructed Umsted to lift the suspension. (*Id.* ¶ 3). Following her return to work, Plaintiff claims Umsted further discriminated against her and retaliated against her for two years by, among other actions, isolating her from her clinical unit, removing her charge nurse duties, moving her to a lower level care unit, threatening her if she tried to return to her original unit, fabricating performance issues about her and refusing to address the safety concerns she had reported. (*Id.* ¶ 4). For instance, on one occasion in December 2023, Plaintiff alleges

that Umsted punished her, a Black nurse, for a mistake related to her administration of Insulin, in a harsher manner than he punished non-Black nurses for more severe offenses. (*Id.* ¶ 38). Plaintiff further alleges that in July 2024, Umsted suspended her for five months—three days after she filed a report related to patient safety violations and gross negligence—and later terminated her employment in November 2024. (*Id.* ¶ 5). Separately, Plaintiff alleges that she experienced a hostile work environment due to the actions of other nurses, who refused to help her, and other managers, who retaliated against her when she raised concerns. (*Id.* ¶ 10).

In Plaintiff's original complaint[1], she also alleged a pattern of Kaiser denying her a proper fact-finding investigation, (Notice of Removal ("NOR"), Dkt. No. 1, Decl. of Christian Rowley ISO Def.'s NOR ("Rowley Decl."), Dkt. No. 1-3, Ex. A ¶¶ 14, 15, 25 (Compl.)), that she was suspended "without due process nor evidence" (*id.* ¶ 34) and "in violation of just cause" (*id.* at 3), that her manager refused to schedule her for "her contractual 36 hours a week" (*id.* ¶ 40), that Umsted and her union "organized and instructed nurses to strike against [her] and forced her out of her job" (*id.* ¶ 78)and that Kaiser violated Collective Bargaining Agreement (the "CBA") requirements for imposing progressive discipline (*see e.g.*, *id.* ¶ 61).

Plaintiff's employment was subject to a CBA executed, in relevant part, by Kaiser and Southern California Permanente Medical Group (together, the "Employer") and United Nurses Associations of California / Union of Health Care Professionals ("UNAC / UHCP" or commonly called "UNAC" only) and other affiliated associations (together, the "Union"). (*See* Decl. of Jeremy Lyon ISO Def.'s NOR ("Lyon Decl."), Dkt. No. 1-1, Ex. A). UNAC is a union that represents registered nurses in Southern California, including Plaintiff. (Lyon Decl. at 1).

---

[1] The Court takes judicial notice of the factual allegations in Plaintiff's original complaint that were omitted in the FAC. *Nevarez v. FedEx Supply Chain Inc.*, 2024 WL 734227, at *1 n.1 (C.D. Cal. Feb. 21, 2024) ("Proceedings . . . including orders and filings, are the proper subject of judicial notice when directly related to the case, though not for the truth of the contents of the underlying documents.") (collecting cases).

Certain provisions of the CBA provide standards for employee discipline and discharge (Lyon Decl., Ex. A, Section 907 ("The Employer shall discipline, suspend or discharge any Health Care Professional for just cause only"); Section 912 ("The discipline imposed will be appropriate to the offense."); *id*. ("Health Care Professionals may be discharged for gross misconduct or gross neglect of duty without prior warning.")), procedures for raising and resolving grievances (*id*., Article 10) and requirements for hours of work and overtime (*id*., Sections 1601-23).

**B. <u>Procedural Background</u>**

Plaintiff filed this action against Defendants Kaiser Foundation Hospitals, Kaiser Foundation Health Plan Inc., Southern California Permanente Medical Group, Chantelle Loustalet, UNAC / UHCP, Brad Umsted, Lillian Lim, Tracey McNamara, Robert Brannen, and Does 1-100, inclusive. The remaining Defendants following Plaintiff's filing of the First Amended Complaint (hereinafter, the "Complaint") are Kaiser Foundation Hospitals, Kaiser Foundation Health Plan Inc., Southern California Permanente Medical Group, Brad Umsted, and Does 1-100, inclusive (collectively, "Defendants"). (*See* FAC). The Complaint alleges six state law claims: (1) Retaliation for Engaging in a Protected Activity under California's Fair Employment and Housing Act (the "FEHA"), Ca1. Gov. Code § 12900, (2) Race Discrimination in Violation of FEHA, Ca1. Gov. Code § 12940, (3) Failure to Prevent Discrimination, Harassment, and/or Retaliation in Violation of FEHA, Ca1. Gov. Code § 12940, (4) Retaliation for Complaints of Discrimination, Harassment, and/or Retaliation in Violation of FEHA, Ca1. Gov. Code § 12940, (5) Retaliation in Violation of Cal. Labor Code § 1102.5 and (6) Wrongful Termination of Employment in Violation of Public Policy, Labor Code § 1102.5, Health & Safety Code § 1278.5 and FEHA, Ca1. Gov. Code § 12940.

Plaintiff initiated this action in the Los Angeles Superior Court on January 6, 2026. (*See* Compl.). On February 17, 2026, Kaiser filed its Notice of Removal on the basis of federal question jurisdiction, arguing (1) preemption of state law claims by

Section 301 of the Labor Management Relations Act ("LMRA"), codified in relevant part at 28 U.S.C. § 185 ("Section 301"), (2) interpretation of a health and welfare plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., under ERISA § 1132(a)(1)(B)[2] and (3) supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (*See* NOR at 2). On March 10, Plaintiff filed her First Amended Complaint. (*See* FAC).

On June 23, 2026, Plaintiff filed the Motion before this Court.[3] (*See* Mot.). Kaiser filed its Opposition on July 14, 2026 (Def.'s Opp'n Re Mot. to Remand ("Opp'n"), Dkt. No. 60), and Plaintiff filed her Reply on July 28, 2026. (Pl.'s Reply to Def.'s Opp'n Re Mot. to Remand ("Reply"), Dkt. No. 64). The Motion is fully briefed.

## II. DISCUSSION

### A. Legal Standard

A defendant may remove an action from state court to federal court if the plaintiff could have originally filed the action in federal court. *See* 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over civil claims "arising under" federal law. Removal based on Section 1331 is governed by the "well-pleaded complaint" rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[R]emoval statutes should be construed narrowly in favor of remand to protect the

---

[2] The ERISA basis for removal was mentioned in the Notice of Removal but was omitted from Kaiser's opposition briefing to Plaintiff's Motion to Remand.

[3] The Court will consider the Motion to Remand filed at Dkt. No. 49 to be the operative Motion. The other Motions to Remand have been stricken. (Order Striking Redundant Mots. to Remand, Dkt. No. 66).

jurisdiction of state courts." *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) (citing to *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012).

The party invoking the federal court's removal jurisdiction bears the burden of establishing federal jurisdiction, *see Emrich v. Toche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988), and "federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (internal quotation and citation omitted). "To determine whether the removing party has met its burden, a court may consider the contents of the removal petition and 'summary-judgment-type evidence.'" *Tanious v. Gattoni*, 533 F. Supp. 3d 770, 775 (N.D. Cal. 2021) (quoting *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004)).

**B. <u>Analysis</u>**

*1. LMRA Preemption Does Not Confer Federal Question Jurisdiction*

Plaintiff argues that Kaiser has not established federal question jurisdiction in the removal of this action.[4] (*See generally* Mot.; Reply). Kaiser argues that complete federal preemption under Section 301 of the LMRA provides a proper basis for removal. (Opp'n at 6). "A corollary to the well-pleaded complaint rule is the 'complete preemption' doctrine, which applies in cases in which 'the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint

---

[4] Plaintiff argues that for the CBA "to supersede Plaintiff['s] state statutory claims . . . the CBA must contain a 'clear and unmistakable' waiver that explicitly names [FEHA] and all state laws involved in the waiver." (Reply at 7-8). None of the cases Plaintiff cites evaluate a CBA on a motion to remand, and all are distinguishable because they demonstrate the clear waiver requirement in contexts unrelated to FEHA, namely the waiver of the right to litigate in a judicial forum. *See Wright v. Universal Mar. Servs. Corp*, 525 U.S. 70, 7981 (1998) (waiver of right to litigate in a judicial forum in place of arbitration), *Mendez v. Mid-Wilshire Health Care Ctr.* (2013) 220 Cal. App. 4th 534 (same); *Volpei v. County of Ventura* (2013) 221 Cal. App. 4th 391 (same); *Metropolitan Edison Co. v. N.L.R.B.*, 460 U.S. 693 (1983) (no clear waiver of right under the National Labor Relations Act to be free of antiunion discrimination). As such, no explicit waiver of FEHA is required here for Section 301 of the LMRA to preempt the state claims.

rule.'" *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057 (9th Cir. 2007) (quoting *Caterpillar*, 482 U.S. at 393). "Section 301 of the LMRA has such 'extraordinary' preemptive power." *Padilla v. Ames Constr., Inc*., 2025 WL 1738656, at *4 (C.D. Cal. June 20, 2025) (citing *Curtis v. Irwin Indus., Inc*., 913 F.3d 1146, 1152 (9th Cir. 2019) (citing *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987))). "[T]he Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Id*. (*Curtis*, 913 F.3d at 1151 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985); *Teamsters v. Lucas Flour Co*., 369 U.S. 95, 103-4 (1962))). In short, LMRA preemption may exist where a plaintiff asserts state law claims but her employment was governed by a collective bargaining agreement.

The complete preemption doctrine does have its limits, however. Section 301 of the LMRA cannot "pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Curtis*, 913 F.3d at 1152 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). When a "claim is plainly based on state law, [Section] 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consol. Freightways, Inc*., 255 F.3d 683, 691 (9th Cir. 2001); *Lueck*, 471 U.S. at 211 ("[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by [Section] 301.").

The Ninth Circuit in *Burnside v. Kiewit Pacific Corporation*, 491 F.3d 1053 (9th Cir. 2007), established a two-step analysis to determine whether LMRA preemption applies. The first step is to ask whether the cause of action involves a "right [that] exists solely as a result of the [collective bargaining agreement]," in which case the claim is preempted and step two is unnecessary. *Curtis*, 913 F.3d at 1152 (quoting *Kobold*, 832 F.3d at 1032; *Burnside*, 491 F.3d at 1059). "[C]laims are not simply CBA disputes by another name . . . if they just refer to a CBA-defined right; rely in part on a CBA's terms of employment; run parallel to a CBA violation;

or invite use of the CBA as a defense." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (*en banc*) (citations omitted). If the right does exist independently of the CBA, then the court turns to the second step of the analysis: whether the state law right is "substantially dependent" on an interpretation of the CBA. *Burnside*, 491 F.3d at 1059. In other words, the claim can only be resolved by "interpreting," not merely "look[ing]," to the CBA. *Curtis*, 913 F.3d at 1153 (citing *Kobold*, 832 F.3d at 1033). "[T]he bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require" preemption where the meaning of contract terms is not in dispute. *Livadas*, 512 U.S. at 124; *see also Cramer*, 255 F.3d at 690 ("[E]ven if dispute resolution pursuant to a [CBA], on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 purposes." (citation omitted)). Thus, if resolution of the claim is dependent on the *interpretation* of the CBA, the claim is preempted.

Kaiser argues that Plaintiff's Causes of Action 1-2, and 4-6 are preempted by Section 301 of the LMRA. Plaintiff disagrees. The Court thus addresses each below.[5]

a. Retaliation and Wrongful Termination (Fifth and Sixth Causes of Action)

Kaiser argues that Plaintiff's Causes of Action 5 and 6 are preempted under *Burnside* Step 1 because the rights they implicate "arise solely from the CBA and not from state law." (Opp'n at 7). Kaiser specifically points to Plaintiff's original complaint wherein she alleged a pattern of Kaiser denying her a proper fact-finding investigation, (Compl. ¶¶ 14, 15, 25), that she was suspended "without due process nor evidence" (*id.* ¶ 34) and "in violation of just cause" (*id.* at 3), that her manager refused to schedule her for "her contractual 36 hours a week" (*id.* ¶ 40), that Umsted

[5] The Parties do not dispute that the CBA between Kaiser and the Union governs Plaintiff's employment by Kaiser as a nurse. (*See* NOR at 6 (citing Compl.)).

and her union "organized and instructed nurses to strike against [her] and forced her out of her job" (*id.* ¶ 78) and that Kaiser violated CBA requirements for imposing progressive discipline (*see e.g.*, *id.* ¶ 61). Kaiser then provides the language from the CBA to assert that such provisions must be interpreted to determine whether the corrective actions taken by Kaiser violated the CBA's "just cause" requirement and whether she had a right to fact-finding investigation as a protection. (Opp'n at 7-8 (citing CBA Section 912 ("The discipline imposed will be appropriate to the offense."); Section 907 ("The Employer shall discipline, suspend or discharge any Health Care Professional for just cause only.")). In its Notice of Removal, Kaiser also cited to the CBA's procedures related to raising and resolving grievances. (NOR at 7 (citing CBA Section 1002)).

Plaintiff argues that the timing of certain adverse actions taken against her "evidence [Kaiser's] retaliatory motives and violations of Plaintiff['s] independent statutory rights protected under state laws." (Mot. at 12). In the Motion, Plaintiff underscores two of the circumstances of retaliation and wrongful discharge that she referenced in the Complaint, alleging they were based on a "lack of evidence": (1) the first allegedly two weeks after she asked her manager "why he targeted her," and (2) the second allegedly three days after she "filed an occurrence report for patient safety violation and gross negligence." (Mot. at 12-13).

"A claim that a discharge violates public policy is preempted if it is not based on any genuine state public policy, or if it is bound up with interpretation of the collective bargaining agreement and furthers no state policy independent of the employment relationship." *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 643-44 (9th Cir. 1989) (cleaned up). Conversely, a claim of wrongful discharge in violation of public policy "is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship." *Id.* at 644. California has adopted a clear "public policy against workplace discrimination." *Brown v. Brotman Med. Ctr.*, 571 F. App'x 572,

575 (9th Cir. 2014); *see, e.g*., Cal. Gov't Code § 12920 ("It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination . . .").

Plaintiff's fifth and sixth causes of action are premised on wrongful termination and retaliation for raising concerns about racial discrimination and Plaintiff's lodging of complaints regarding alleged noncompliance with health and safety standards. These claims further genuine state public policies of preventing retaliation against employees who act as whistleblowers, raising concerns of racial discrimination and health and safety. *See, e.g., Stearns v. Davis Wire Corp*., 2016 WL 3008167, at *7 (C.D. Cal. May 23, 2016) (finding wrongful termination claim not preempted where it was premised on race-based termination and retaliation for complaints about discrimination and workplace safety and assault); *Steib v. Sony Pictures Television Inc*., 2023 WL 3292865, at *6 (C.D. Cal. May 5, 2023) (same regarding race-based wrongful discharge). The right Plaintiff has to be free from wrongful termination and retaliation for raising concerns about racial discrimination and manager noncompliance with health and safety standards are not rights that exist solely as a result of the CBA but rather are protected by California state law and directly serve the purposes of California state laws, including Labor Code § 1102.5, Health & Safety Code § 1278.5 and FEHA, Ca1. Gov. Code § 12940.

Kaiser alternatively argues that even if Causes of Action 5 and 6 are not preempted by Section 301 under the first prong of the *Burnside* analysis, they are nevertheless preempted under the second because they "are substantially dependent upon analysis of the terms of [the CBA]." (Opp'n at 9 (citing *Lueck*, 471 U.S. at 211; *Metro. Life, Ins. Co*, 481 U.S. at 63-64)). Kaiser claims that the alleged "adverse employment actions will require interpretation of the CBA's progressive discipline procedures, the just cause requirements, and the termination restrictions set forth in the CBA." (*Id*. at 10). Kaiser does not actually explain why specific terms in the

CBA must be interpreted to resolve the fifth and sixth causes of action, and, as it is the removing party's burden to put forth this explanation, the Court will not surmise one for Kaiser. In the Court's view, interpretation of the CBA is not necessary to resolve the instant claims because a finding that Kaiser had "just cause" under the CBA to discharge Plaintiff, for example, would not affect whether any such discharge nonetheless violated California public policy proscribing termination on prohibited grounds (e.g., racial discrimination or whistleblower activity).

Therefore, the fifth and sixth causes of action are not preempted by Section 301 of the LMRA.

b. FEHA (First, Second, Fourth Causes of Action)

Kaiser argues that the FEHA Causes of Action are also preempted by the LMRA. The Ninth Circuit has "consistently held that the LMRA does not preempt FEHA claims" because the rights underlying FEHA claims are "independent" of CBAs. *Brown*, 571 F. App'x at 574-75 (citing *Ramirez v. Fox Television Station, Inc*., 998 F.2d 743, 748 (9th Cir. 1993)); *Schrader v. Noll Mfg. Co*., 91 F. App'x 553, 555 (9th Cir. 2004) (finding no Section 301 preemption of FEHA disability discrimination claim because the right not to be free from disability discrimination is "defined and enforced under state law without reference to the terms of any collective bargaining agreement"). "These rights are 'nonnegotiable' and 'cannot be removed by private contract.'" *Ramirez*, 998 F.2d at 748; *see Stearns*, 2016 WL 3008167, at *5 n.3 (collecting cases). Nevertheless, Kaiser correctly notes that some "courts in this Circuit have found preemption when a plaintiff's discrimination claims require interpretation of a CBA," *Armstrong v. WB Studio Enters., Inc*., 2020 WL 1967566, at *3 (C.D. Cal. Apr. 24, 2020) (collecting cases). At least one of the cases cited by *Armstrong* is inapplicable here. *See Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107 (9th Cir. 1999) (plaintiff claimed that defendants discriminated against him by failing to comply with a settlement agreement that had expressly incorporated the terms of an underlying CBA).

Another case cited by *Armstrong* is only superficially analogous. In *Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244 (C.D. Cal. 2000), plaintiff sued his union claiming that it had discriminated against him in the manner in which it had handled a grievance procedure, and, therefore, the Court had to determine what the CBA's grievance procedures were and whether they had been applied to plaintiff in a discriminatory manner. But in that case, the claims of discrimination and retaliation were premised upon an analysis of the CBA grievance procedures themselves: plaintiff claimed that his grievance was handled differently from other grievances filed by claimants of other races and inconsistently with the CBA. *Id.* at 1255. Here, in contrast, the Complaint posits a more straightforward discrimination claim that does not resort to analyzing the terms of the CBA to resolve. Thus, the Court finds that holding Plaintiff's FEHA claims as not preempted is consistent with the holding in *Madison*.

For the foregoing reasons, the Court finds that Plaintiff's FEHA claims are not preempted by the LMRA.[6]

c. Kaiser's Possible Defenses

Kaiser's reference to provisions of the CBA for its possible defenses does not mandate Section 301 preemption. Kaiser argues that any defenses it "pleads will necessarily require an interpretation of the CBA," for instance, that it properly

---

[6] The Court recognizes that the jurisdictional inquiry must occur based on the allegations at the time of the Notice of Removal. *See, e.g., Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (assessing amount-in-controversy based on that claimed at the time of removal). At the time that Kaiser filed its Notice of Removal, the operative complaint was the original complaint, which included additional causes of action and factual allegations that were omitted from Plaintiff's later-filed First Amended Complaint. On their face, none of the omitted causes of action pose federal questions as they are all state law claims. Further, Kaiser, which bears the burden as the removing party, does not attempt to argue in its Opposition to the Motion to Remand that the Court can find federal question jurisdiction based on LMRA preemption of the omitted causes of action. Rather, Kaiser argues in favor of LMRA preemption for the remaining causes of action, while referencing several facts from the original complaint which were omitted in the First Amended Complaint. The Court has considered those factual allegations, as discussed, *supra* note 1, to evaluate the remaining causes of action, but the facts referenced by Kaiser are still insufficient to convert the remaining causes of action into those that require interpretation of the CBA to be effectively adjudicated.

assigned shifts to employees in compliance with the terms of the CBA or that it denied promotion to someone for a legitimate business-related reason. (Opp'n at 11). Meanwhile, Plaintiff argues that "Section 301 preemption is not mandated simply because the defendant relies on the CBA to mount a defense." (Mot. at 11).

The Court agrees with Plaintiff that "[Section] 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer*, 255 F.3d at 691. Rather, "adjudication of the claim must require interpretation of a provision of the CBA." *Id*. at 691-92. Therefore, Kaiser's potential to wield the CBA as a shield has no impact on the Court's preemption analysis; the Court need only analyze the Plaintiff's swords.

*2.* Garmon *Preemption Does Not Confer Federal Question Jurisdiction*

In the alternative to Kaiser's LMRA preemption arguments, Kaiser contends that Plaintiff's claims are all subject to *Garmon* preemption, *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959), "because the allegations supporting these claims fall within the primary jurisdiction of the NLRB." (Opp'n at 11).

The Ninth Circuit has held, however, that "district courts do not have original federal question jurisdiction over state-law claims which are" merely "subject to a defense of *Garmon* preemption . . . and [] such claims may not be removed to federal court." *Bud Antle, Inc. v. Barbosa*, 35 F.3d 1355, 1363 (9th Cir. 1994) (clarifying *Ethridge v. Harbor House Rests.*, 861 F.2d 1389, 1396-1401 (9th Cir. 1988)). Only in a few specific circumstances can lower federal courts undertake the *Garmon* analysis: when a party has raised *Garmon* as a defense to a state law claim that is otherwise properly before the district court through diversity or supplemental jurisdiction, when enjoining the enforcement of state regulations that are preempted by the NLRB's decision to exercise jurisdiction and when a private party has brought an action to enjoin enforcement of a state statute on the ground that the statute regulated activity which was arguably protected or prohibited by the NLRA. *Id*. at 1363 (collecting

cases). None of these special circumstances exist in the instant case. As such, this Court will not determine whether *Garmon* preemption applies as a defense for Kaiser because its existence would not confer federal question jurisdiction to the Court.

*3. Supplemental Jurisdiction Does Not Confer Federal Subject Matter Jurisdiction*

Kaiser further asserts that, if the Court finds that any one of Plaintiff's claims is not preempted by Section 301 of the LMRA, "it may extend supplemental jurisdiction over that claim." (Opp'n at 14). Because the Court lacks federal question jurisdiction over Plaintiff's claims, it cannot exercise supplemental jurisdiction.

*4. Use of Artificial Intelligence and Third-Party Websites*

Lastly, the Court underscores its Standing Order to remind Plaintiff that the inclusion of non-existent quotations in Plaintiff's briefing submitted to this Court is unacceptable. (*See* Opp'n at 3-4; Order Re Amended Civil Case Standing Order, Dkt. No. 65 at 18-20 ("caution[ing] that unqualified reliance on AI-generated content can result in filings that rely on misrepresentations and hallucinated, nonexistent caselaw")). While the Court understands that Plaintiff is proceeding *pro se*, the Court does not condone the submission of misstated case law from any litigant and is concerned by Plaintiff's doubling-down in her Reply where she claims that Kaiser pointed out her incorrect quotations in bad faith to improperly attack her, rather than correcting her citations. (Reply at 10-13). *Pro se* litigants, as with all litigants, must comply with the Federal Rules of Civil Procedure and the Local Rules. *See Chapman v. Horace Mann Prop. & Cas. Ins. Co.*, 2025 WL 3724904, at *2 (C.D. Cal. Aug. 14, 2025). Quoting paraphrased language generated from artificial intelligence tools, published on websites explaining case law (*e.g.*, law.cornell.edu), or from personal manipulation without appropriate signals (*e.g.*, without bracketing, ellipses, etc.) as if those quotations came directly from the cases themselves is squarely prohibited. If Plaintiff were a lawyer, the Court would be imposing significant sanctions for this conduct.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Remand. This action is **REMANDED** to the Superior Court of California, County of Los Angeles, Case No. 26STCV00245. Kaiser's Motion to Dismiss (Dkt. No. 17) and Plaintiff's Motion for Default Judgment (Dkt. No. 21) are **DENIED** as moot because the case is remanded. The Clerk is **INSTRUCTED** to administratively close the case and vacate all pending deadlines. The Clerk shall transmit a certified copy of this Order to the Superior Court of California, County of Los Angeles forthwith.

**IT IS SO ORDERED.**

Dated: August 20, 2026

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE